## JACKSON *v.* MERCHANTS' HOTEL ASSOCIATION.

1. CHATTEL MORTGAGE—ACCOUNTING—ACTION TO REDEEM.—Where property is seized by the holder of a chattel mortgage after condition broken, the mortgagor may redeem before sale, or, after sale, claim an accounting for the surplus proceeds of sale after payment of the mortgage debt and all other indebtedness of the mortgagor to the mortgagee.

2. IBID.—IBID.—IBID.—*It would seem* that a junior mortgagee would occupy the position of assignee of the mortgagor, and have only these same rights, provided the chattel mortgaged could be sold only *in solido*.

3. IBID.—IBID.—JUNIOR MORTGAGE—CASE CRITICISED.—But where the senior mortgagee was the landlord, and also levied a distress warrant for rent and sold the chattels separately, realizing more than enough to satisfy his mortgage, the sales, after such satisfaction, could be referred only to the distress warrant, which was subsequent in lien (if a lien) to a junior mortgage, and, therefore, were made subject thereto. The purchasers of the articles sold under the distress warrant bought subject to the second mortgage, which had then become the senior lien, and the remedy of the second mortgagee was against the articles themselves, and not against the proceeds of sale in the hands of the first mortgagee, such proceeds representing only a sale of the equity of redemption, which was liable for the rent. *Paysinger* v. *Shumpard*, 1 Bail., 237, recognized and followed.

4. IBID.—IBID.—IBID.—In such case, the burden of proof would be on the plaintiff, the second mortgagee, to show what articles were sold after the satisfaction of the first mortgage.

5. JUNIOR CHATTEL MORTGAGE—ACTION TO REDEEM.—It may be that second

mortgagees could maintain an action to redeem at any time prior to a sale of the chattels by the first mortgagees, but not after a sale had been made.

Before HUDSON, IZLAR, and WITHERSPOON, JJ., Spartanburg, April, 1889, 1890, 1891.

This was an action by Eri H. Jackson, N. W. McDermid, and W. E. Butler, commenced against the Merchants' Hotel Association of Spartanburg. The appeal came to this court on the following exceptions:

I. Because his honor, Judge Hudson, erred in overruling defendant's demurrer, and holding that the complaint did state facts sufficient to constitute a cause of action. II. In overruling defendant's demurrer, and holding that there was no misjoinder of causes of action. III. Because his honor, Judge Izlar, erred in finding that the defendant, in selling the property of Lee, sold first enough to pay off their prior mortgage and the balance under their distress warrant, and because of similar error in Judge Witherspoon's decree. IV. In holding that plaintiffs could require defendants to account for whatever balance remained of the goods after paying defendant's prior mortgage, without first accounting themselves to defendants for their rent debt, just as the mortgagor would have been required to do if he were seeking an accounting. V. In not finding that defendant's claim for rent was a prior lien to plaintiffs' mortgage on the goods. VI. In finding that plaintiffs were entitled to a personal judgment against the defendant, and in not holding that if they were entitled to any relief at all, it should be to a sale for foreclosure of the property embraced in their mortgage, and because of similar error in Judge Witherspoon's decree. VII. In finding that plaintiffs were entitled to judgment for eight hundred dollars, unless defendant could show that part of the property was purchased subsequent to execution of plaintiffs' mortgage, and that said sum should only be reduced to the value of the goods so proven to have been subsequently bought—thus casting on defendant the burden of showing what goods were not mortgaged, when plaintiffs should have been required to show what goods were mortgaged to them, and

should not have been allowed judgment for any other goods. VIII. In not finding what sum defendant owed each of the plaintiffs separately, if they owed them at all, and ordering judgment accordingly, and because of similar error in Judge Witherspoon's decree. IX. Because his honor, Judge Witherspoon, erred in basing his findings as to the amount and value of goods bought subsequent to May 23d, 1885, on part of the testimony of J. Watkins Lee, and rejecting the balance of his and other testimony favorable to defendant. X. In not finding that there were other articles sold that were not on hand at execution of plaintiffs' mortgage besides those in Lee's statement, adopted by him and the master. XI. In finding, without sufficient evidence, that one-half of certain goods bought by Lee after May, 1885, were gone at time of sale; and that the other half, with other goods bought after said date, only brought twenty-five per cent. of cost price at the sale—all of which appears by statement appended to master's report. XII. In not applying the same, or something like the same, rule to the goods that were bought prior to May, 1885, and in not concluding therefrom that there were not more goods left at the time of the sale than enough to pay defendant's prior mortgage. XIII. In not finding the amount of goods bought between October, 1885, and the sale, when the testimony was uncontradicted that goods were bought during said time, and in not sustaining defendant's exception to the master's report as to this matter, and recommitting the cause. XIV. In not finding that much of the property found by the master to have been on hand May 23d, 1885, was not sufficiently described in plaintiffs' mortgage to be found thereby, and in not finding that said mortgage, as to such property, was indefinite and void. XV. In not sustaining the defendant's exception to the master's report, which complains that the master should have submitted a schedule of the articles mortgaged and the price they brought at the sale. XVI. In not finding that the carpets bought by Lee after May, 1885, brought more than fifty per cent. of cost at the sale, and in not modifying the master's report accordingly.

*Messrs. Bomar & Simpson* and *Nicholls & Moore,* for appellants.

*Messrs. Stanyarne Wilson* and *W. E. Butler,* contra.

November 18, 1892. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. The defendant Lee being engaged in carrying on the hotel business in the Merchants' Hotel, which he had leased from the corporation known as the Merchants' Hotel Association, Spartanburg, South Carolina, on the 3d day of April, 1885, executed a chattel mortgage, in favor of Heinitsh & Bowden, on all the personal property then being used, or thereafter to be used, in carrying on said hotel. On the 23d May, 1885, the said Lee executed another mortgage "upon the chattels then being in the same hotel," to secure the payment of four notes, one of which was payable to the plaintiff Jackson, two to the plaintiff McDermid, and the remaining one to the plaintiff Butler. On the 1st day of February, 1887, the hotel association issued a distress warrant for the rent of the hotel, $920, for the year 1886, and seized all the personal property then in the hotel, and having purchased the senior mortgage, advertised said property for sale under it, as well as under the distress warrant, on the 17th March, 1887. After having sold a sufficient amount of property to satisfy the senior mortgage and the expenses of the seizure and sale, the said hotel association proceeded to sell the balance of the property under the distress warrant, and received the proceeds of such sale.

Thereupon the plaintiffs brought this action against said hotel association, calling upon them to account for the full value of the property so sold in excess of the amount due on the senior mortgage. The defendant association demurred to the complaint on three grounds: 1st. Because the complaint did not state facts sufficient to constitute a cause of action. 2d. For misjoinder of causes of action. 3d. For defect of parties. After hearing the pleadings and the argument of counsel, his honor, Judge Hudson, overruled the first two grounds, and sustained the third, but granted plaintiffs leave to amend their complaint, by making J. Watkins Lee and his assignee parties

defendants.   The complaint was accordingly so amended, and the hotel association filed their answer, neither Lee nor his assignee putting in any answer.

The case was then referred to the master, who took the testimony set out in the "Case," and made his report, finding as matter of fact that the sale was a fair one, and that the property sold for fair prices ; but he found as matter of law that the hotel association, after selling sufficient property to satisfy the senior mortgage, had no authority to sell the balance under the distress warrant, and they were, therefore, liable to account to plaintiffs for so much of the proceeds of the sale as exceeded the amount due on the senior mortgage, and the expenses of enforcing such mortgage, which excess he fixed at the sum of eight hundred and two dollars and thirty cents, for which sum, with interest thereon from the 18th day of March, 1887, together with the costs of the action, he recommended that the plaintiffs have judgment against the defendant association.

To this report said defendants excepted, and the case was heard by his honor, Judge Izlar, upon the report and exceptions, who rendered judgment confirming the master's findings of fact, and while agreeing with him that the hotel association had no authority to sell any of the property, except so much thereof as was necessary to satisfy their senior mortgage and the expenses, and were, therefore, liable to account to plaintiffs for so much of the proceeds of the sale, in excess of said amount, as was derived from the property covered by the plaintiffs' mortgage, yet that, as such mortgage did not cover after-acquired property, the plaintiffs would not be entitled to recover the proceeds of the sale of such property, if any, as was acquired by Lee after the execution of the mortgage to plaintiffs, he held that : "The plaintiffs are entitled to judgment against the defendant association for the sum of eight hundred and two and 30–100 dollars, with interest from March 18th, 1887, and costs less the amount with interest, of the proceeds of such chattels as were subsequently acquired as above mentioned ;" and, therefore, the case was recommitted to the master, "to take testimony and report what, if any, of the chattels sold, were acquired by the mortgagor after May 23d, 1885."

Testimony was accordingly taken as to the point referred, which is also set out in the "Case," and the master made a second report, finding that the proceeds of the sale of such articles as could be ascertained to have been acquired after the date of plaintiffs' mortgage, amounted, with interest, to the sum of three hundred and sixty-six dollars—leaving as the amount for which plaintiffs are entitled to judgment under the order of Judge Izlar, six hundred and forty-four dollars and thirty-eight cents. To this second report of the master the hotel association filed exceptions, and the same came before his honor, Judge Witherspoon, who overruled the exceptions, confirmed the report of the master, and rendered judgment in favor of plaintiffs against the said hotel association for the sum of six hundred and forty-four dollars and thirty-eight cents, together with the costs of the action. From this judgment, as well as the orders and decrees of their honors, Judges Hudson and Izlar, defendant association appeals upon the several grounds set out in the record, which should be incorporated in the report of this case.

We do not propose to consider these grounds *seriatim,* but rather to consider what we regard as the controlling questions in the case. For this purpose it will be necessary first,

1   to determine the precise legal relations in which the several parties stood to each other. As we understand it, the appellants, the hotel association, were the owners and holders of the senior mortgage, which covered all the property in question, as well as that in the hotel at the time of the execution of their mortgage, as that subsequently placed therein for the purpose of carrying on the hotel business, while the plaintiffs were the owners and holders of a junior mortgage, which only covered so much of the same property as was in the hotel at the date of the execution of their mortgage, 23d day of May, 1885. The appellants also held a claim for rent, the lien for which, if any, was junior to both of said mortgages. This being the attitude of the parties, what were their respective rights and liabilities? There can be no doubt that upon the breach of the condition of the senior mortgage, the holders thereof became the legal owners of the mortgaged pro-

perty—not absolutely, but with the right to seize and sell the same, accompanied with a liability to the mortgagor, or to any one who may stand in his shoes, to account for so much of the proceeds of the sale as exceeded the mortgage debt; and there can be as little doubt that, in such a case, the only rights which the mortgagor would have, would be either to redeem before the sale, or to claim an account of the proceeds of the sale, after the sale had taken place, and upon such accounting, the mortgagees would be entitled to credit not only for the amount of the mortgage debt and expenses, but also for any unsecured claim held by them against the mortgagor. *Reese* v. *Lyon*, 20 S. C., 17; *McClendon* v. *Wells, Ibid.*, 514.

So that if this were a proceeding by the mortgagor, instead of by the junior mortgagees, for an account from the mortgagees of the proceeds of the sale, they would be entitled to credit for the amount due for rent as well as for the mortgage debt and expenses, and as these amounts exceeded the amount of the proceeds of the sale, it is quite clear that the action would be fruitless. But as this action has been brought by the junior mortgagees and not by the mortgagor, it is necessary to inquire further, what are their rights in the premises? If the mortgaged property had been a single article which could only be sold *in solido*, then it seems to us that the junior mortgagees would stand in the same position as the mortgagor, entitled only to an account of the proceeds of the sale, and upon such accounting, the senior mortgagees would be entitled to credit for their claim of rent; for, although such claim did not arise until after the execution of the junior mortgage, yet it did arise before the right to an accounting accrued, as that right did not, and could not, accrue until after the sale was made; for, until that event, it could not be known whether the mortgaged property would bring an amount more than sufficient to satisfy the senior mortgage, and hence the junior mortgagees, becoming entitled to the right of accounting as assignees of the mortgagor, must take that right subject to all equities existing between their assignor and the senior mortgagees at the time such right was acquired, and consequently the then existing claim for rent would necessarily be allowed.

Inasmuch, however, as the mortgaged property consisted of numerous distinct and separate articles of property, which could be, and were, sold separately, it may be that when the senior mortgagees had sold sufficient of the mortgaged property to satisfy their mortgage, all the other articles sold were not sold under the senior mortgage, but under the distress warrant, the lien of which was junior to that of the plaintiffs' mortgage. Assuming this to be so, then the claim of plaintiffs would not, properly speaking, be a claim for an account of the proceeds of the sale of mortgaged property, but would rather be a claim for the proceeds of the sale of property sold under a lien junior to that of their mortgage. Regarding this case in that light, the question is, whether one having a prior lien upon personal property which has been seized and sold by the holder of a subordinate lien has any cause of action for the proceeds of such sale, or whether his remedy is not against the property in the hands of the purchaser. That question has been practically determined by the case of *Paysinger* v. *Shumpard*, 1 Bail., 237, where it was held that one coming into the possession of property subject to the lien of an execution, does not incur a personal liability to the execution creditor; nor can the latter maintain an action against him for the price which he received on subsequently selling it. The lien is on the property only. The circumstances of that case were these: defendant received from one Smith, in payment of a debt, a bale of cotton belonging to Smith, but subject to the lien of an execution which plaintiff had recovered against Smith, of which lien defendant was fully aware. He afterwards carried the cotton to market and sold it, and the plaintiff brought his action to recover the proceeds of the sale. The Circuit Judge decreed for defendant, and the Court of Appeals, holding as above, sustained the decree. That case has been recognized and followed in the comparatively recent case of *Sternberger* v. *McSween*, 14 S. C., 35. This, we suppose, is upon the principle that, when property covered by a lien is sold either under a junior lien or otherwise, the purchaser takes it subject to the prior lien, and the price paid is understood to represent the value of the property over and

68—37

above the amount due under the prior lien; in other words, what is very commonly, but very improperly, termed the equity of redemption.

It seems to us, therefore, that assuming that, as soon as a sufficient amount of the mortgaged property had been sold to satisfy the senior mortgage and expense, such mortgage was out of the way, and all the property subsequently sold must be regarded as sold under the distress warrant, the lien of which was junior to that of plaintiffs' mortgage, the effect would be that the purchaser of such property took the same subject to the lien of plaintiffs' mortgage; and that plaintiffs' remedy would be by a seizure and sale of so much of said property, in the hands of the purchaser, as was covered by their mortgage; and that they have no claim for the proceeds of such sale, which really represents the value of the mortgagor's so-called equity of redemption, and is, of course, subject to appellants' claim for rent. It seems that the proper remedy for the plaintiffs was by an action to foreclose their mortgage, to which all proper parties being made, the court could have made an order for the sale of the mortgaged property and the application of the proceeds thereof to the several liens in the order of their priorities. But when they stood by and allowed the appellants to sell the mortgaged property, their only recourse is upon the property remaining after the senior mortgage was satisfied in the hands of the purchasers, or, rather, so much thereof as they could show was covered by the lien of their mortgage; for if they resorted to an action, as they did do, calling on appellants to account for the proceeds of the sale in excess of the amount necessary to pay the senior mortgage and expenses, they could only maintain such action as assignees of the mortgagor, and as such their action would be subject to any claim existing in favor of the appellants against the mortgagor at the time such right of action accrued, and moreover the burden of proof would be upon the plaintiffs to show what articles had been sold, after the satisfaction of the senior mortgage, which were in the hotel at the date of the execution of the mortgage in favor of the plaintiffs. So that, in any view of the case, we think it was error to hold that the plaintiffs

were entitled to judgment against the appellants for so much of the proceeds of the sale, $802.30, as exceeded the amount necessary to satisfy the senior mortgage, less the amount of the proceeds of the sale of such chattels as were acquired subsequent to the 23d of May, 1885, the date of plaintiffs' mortgage, and to refer it to the master to inquire and report what, if any, of the chattels sold were acquired after that date; as the practical effect was to throw the burden of proof upon the appellants, when it should have rested upon the plaintiffs, who were the actors, and who were bound to show what, if any, of the property covered by their mortgage had been sold, as they alleged, improperly by the appellants.

But, as we have said, we do not see how this action can be maintained, and, therefore, the judgment must be reversed.

It may be proper to add, that if this could be regarded as an action to redeem, the rights of the plaintiffs might be very different, as in such case they could only be required to pay the antecedent mortgage debt; but, inasmuch as the action cannot be so regarded, as it was not commenced until after the sale (*Reese* v. *Lyon, supra*), it is not necessary to go into any detailed consideration of what would be the rights of the plaintiffs under an action to redeem.

Under the view which we have taken, the other questions presented by the grounds of appeal become wholly immaterial, and need not, therefore, be considered.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the complaint be dismissed, without prejudice, however, to the right of the plaintiffs to proceed as they may be advised to subject any of the property covered by the lien of their mortgage, which they can find and identify in the hands of the purchasers, to the payment of their mortgage debt.